# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

MARK H. KAEDING,

                :

        Petitioner,                    Case No. 1:11-cv-121

                      :           District Judge Michael R. Barrett

     -vs-                        Magistrate Judge Michael R. Merz

WARDEN, Lebanon Correctional Institution,

                :

        Respondent.

---

# DECISION AND ORDER DENYING MOTIONS FOR EVIDENTIARY HEARING AND ADDITIONAL DISCOVERY; REPORT AND RECOMMENDATIONS ON THE MERITS

---

This habeas corpus case is before the Court for decision on the merits. On the Order of Magistrate Judge Karen Litkovitz (Doc. No. 6), Respondent has filed a Return of Writ with the state court record (Doc. No. 13). Despite Judge Litkovitz's setting a date for a reply or traverse, Kaeding did not file one in response to the original Return of Writ. Instead, the case was stayed to permit Kaeding to exhaust state court remedies (Doc. Nos. 20, 21). After the stay was lifted and the case transferred to the undersigned (Doc. Nos. 24, 26), the Warden filed a Supplemental Return (Doc. No. 31) and Petitioner has filed his Traverse to the Supplemental Return (Doc. No. 43). The case is also pending on Petitioner's Motion for Evidentiary Hearing (Doc. No. 35) and for Discovery (Doc. No. 40). Respondent opposes both Motions (Doc. No. 42).

Petitioner pleads the following Grounds for Relief:

**Ground One:** Prosecutorial misconduct in violation of 5th and 14th

1

Amendments.

**Supporting Facts:** Prosecutor made improper statements to the jury to incite passion and inflame them to prejudice, introduced evidence not adduced at trial to jury in closing arguments, lied to jury, misrepresenting facts and issues. Solicited know perjured testimony from prosecutrix and lead detective. Withheld exculpatory evidence, affidavit of detective and recantation of prosecutrix and prior finding of not guilty (actual statement of prosecutrix). Unconstitutionally obtained indictment in violation of absolute bar imposed by Doctrine of Collateral Estoppel.

**Ground Two:** Ineffective assistance of counsel, of both the lead detective and prosecutrix and present that proof to the jury all violating the Petitioner's 5th, 6th and 14th Amendment rights.

**Supporting Facts**: Counsel failed his discovery duties by not putting lease into discovery which showed Appellant not guilty. Failure to investigate who was on apartment. Failure to call witnesses, failed to assert collateral estoppel, failed to investigate information proving perjured testimony.

**Ground Three**: Ineffective assistance of appellate counsel.

**Supporting Facts:** Failed to raise substantial claims on direct appeal; improperly raised ineffective assistance of trial counsel contrary to appellate rules; failed to preserve ineffective assistance of counsel claim from direct appeal to Ohio Supreme Court on post-conviction, left pending 15 ½ months in violation of 6th, 5th and 14th Amendments.

**Ground Four:** Sufficiency of the evidence, all elements of the indictment not proven beyond a reasonable doubt.

**Supporting Facts:** The State had no physical evidence except for the testimony of the prosecutrix, which was inconsistent and perjured, as well as that of the lead detective. The Court and State admitted the facts were not sufficient to support a finding of guilty on charges occurring in 2003 as required for conviction for rape by attempting to add lesser included charges which could only have been legally viable if occurred in 2004. Despite alleged victim's testimony, sex occurred only once on stand and after trial admitted she lied about 2003 and met Petitioner in 2004. After time of conviction on 2907.02(A)(1)(b) expired, compounds by fact

2

previous testimony in 2004 where she claimed no sex occurred. All of which violates Petitioner's 5th and 14th Amendment rights to fair trial and due process of law.

**Ground Five:** Prosecution withheld exculpatory evidence.

**Supporting Facts**: The Hamilton County Prosecutor withheld two affidavts of Detective Konick showing the alleged rapes occurred on April 1st and April 8, 2002. They withheld from the defense police reports from BP Gas Station the night of the Petitioner's arrest. They withheld from the defense and the court a recantation by the prosecutrix made immediately after trial, the prosecutrix made a complete statement at a prior legal proceeding in which the Prosecutor withheld from the defense and the court, all this in violation of the Petitioner's rights under the 5th and 14th Amendments to a fair trial and the due process of law.

**Ground Six:** Conviction violates the Doctrine of Collateral Estoppel and as such deprived the court of subject matter jurisdiction.

**Supporting Facts:** Since the ultimate issue of fact in the Petitioner's case, whether or not sex occurred between the prosecutrix and the Petitioner prior to 11-30-2004, which was an essential element of the second prosecution for two counts of rape allegedly occurring in April of 2003, had been previously and necessarily determined in the Petitioner's favor in a prior legal proceeding, an absolute and mandatory bar to re-prosecution of the Petitioner on charges in which that ultimate issue of fact was an essential element, was invoked by the Doctrine of Collaterial Estoppel, embedded within the 5th Amendment double jeopardy clause and U.S. Supreme Court precedent in Ashe, thus the Petitioner's re-prosecution violates his 5th and 14th Amendment rights to a fair trial and the due process of law and deprived the court of subject matter jurisdiction to re-prosecute the Petitioner due to absolute and mandatory bar imposed by the United States Supreme Court.

**Ground Seven**: Petitioner's conviction obtained through the use of known perjured testimony.

**Supporting Facts:** The State knowingly used testimony that was found to be perjured. Detective Konicki, who gave sworn testimony in the form of two affidavits which were in fact completely contrary to his trial testimony which was also given under oath and he got

3

this testimony directly from the prosecutrix herself making her testimony perjured as well, additionally she gave conflicting and impossible testimony as well as having given testimony in a prior legal proceeding which was completely opposite of her trial testimony under oath.

**Ground Eight:** Judge improperly excluded exculpatory evidence as sanction for discovery violation.

**Supporting Facts:** When the defense proffered obvious exculpatory evidence that was clearly material to the Petitioner's actual innocence, the court chose to exclude this evidence as a sanction for counsel's failure to comply with the rules of discovery. This severs sanction deprived the Petitioner of a fair trial and his right to present evidence in his defense as well as the due process of law guaranteed him by the 5th, 6th and 14th Amendments of the U.S. Constitution.

**Ground Nine:** Improper evidentiary ruling.

**Supporting Facts:** Specifically the trial court deprived the Petitioner of a fair trial and the due process of law through a series of improper evidentiary rulings, by failing to grant a mistrial for an improper comment of the prosecutrix which violated the limine agreement while basing his ruling solely on a potential double jeopardy implication, excluded exculpatory evidence the lease, as sanction for discovery violation which deprived the Petitioner of his right to present a defense and the confrontation clause, rather than grant a Rule 29 motion for insufficiency of the evidence, he instructed his clerk to add lesser included charge to make up for the insufficiency.

**Ground Ten:** Cumulative effect of all trial errors.

**Supporting Facts:** Specifically while the Petitioner is virtually certain that any of the court errors complained of in this petition standing alone warrant habeas relief, the conviction of the Petitioner is due to the cumulative effect of all the errors at trial, and appeal, rather than the sufficiency of the evidence, all of which violates the Petitioner's right to a fair trial and the due process of law guaranteed by the 5th and 14th Amendments.

(Petition, Doc. No. 1.)

4

## Procedural History

Kaeding was indicted by a Hamilton County grand jury on July 8, 2005, charged with two counts of rape of J.I. by vaginal intercourse and cunnilingus on an undetermined date or dates in April, 2003, at a time when the victim was under thirteen years of age (Indictment, Ex. 1 to Return of Writ, Doc. No. 14, PageID 271.)   Kaeding was convicted by a petit jury in April, 2006, and sentenced to ten years imprisonment on each count, to run consecutively to each other.  *Id*.  Ex. 3.

Kaeding appealed to the Hamilton County Court of Appeals, raising the following assignments of error:

1. Prosecutorial misconduct prejudicially affected Defendant's right to due process and he was subsequently denied a fair trial.

2. The judgment of the trial court is contrary to the manifest weight of the evidence.

3. The trial court erred to the prejudice of Appellant when it denied his motion for a mistrial.

4. Defendant was denied a fair trial, because trial counsel was constitutionally ineffective.

5. The cumulative effect of the errors below deprived Defendant of a fair trial.

(Appellant's Brief, Ex. 6 to Return of Writ.)

The Court of Appeals affirmed the judgment, finding the following facts:

> Defendant-appellant Mark Kaeding has appealed his convictions for two counts of rape. He was sentenced to an aggregate term of 20 years' incarceration. The rapes occurred in 2003, when the victim was 12 years old. The victim testified that she had met Kaeding in 2003 at the apartment of Midge, a friend and neighbor. The first time the victim had met Kaeding, she had gone into Midge's bedroom to borrow some clothes.  Kaeding had come into the bedroom and had performed vaginal and oral sex on the victim. Kaeding bought the victim clothes and took her to dinner. Kaeding

5

> promised to give the victim a Corvette. Kaeding told the victim that he was going to get her false identification so that he could take her to Canada. Kaeding went to New York and Canada.  While Kaeding was away, he wired the victim money. Kaeding returned in June of 2005.
>
> He again began to take the victim shopping and out to dinner. The victim's mother grew suspicious, discovered what Kaeding was doing, and attempted to beat him with a pipe before police stopped her.

*State v. Kaeding*, No. C-060573 (Ohio App. 1st Dist. Nov. 7, 2007)(unreported; copy at Return of Writ, Ex. 8, PageID 322-323.)  The Ohio Supreme Court declined jurisdiction over a further appeal.  *State v. Kaeding*, 117 Ohio St. 3d 1427 (2008).

On April 27, 2007, Kaeding, with the assistance of counsel, filed a petition for post-conviction relief under Ohio Revised Code § 2953.21, raising the following claims:

> A.    Where the State fails to disclose exculpatory evidence material to Defendant's case, Defendant is denied his right to due process, and his conviction should be vacated.
>
> B.    Where trial counsel's performance falls below an objective standard of reasonableness, Defendant is denied his right to a fair trial.

(Petition for Post-Conviction Relief, Ex.13 to Return of Writ, Doc. No. 14, PageID 365-376.)

The trial court denied the Petition on the merits (Ex. 15 to Return of Writ, Doc. No. 14, PageID 383-384).   Kaeding appealed *pro se* raising the following assignments of error:

> 1. The court abused its discretion in not granting a full evidentiary hearing and relief violating Appellant's 14th Amendment (U.S. Constitution) rights.
>
> 2. Where state fails to disclose exculpatory evidence, material to the case, Defendant is denied his right to due process of law and his conviction should be vacated.
>
> 3. The trial court erred in not granting relief on Appellant's claim of

6

> ineffective assistance of counsel due to trial counsel's failure to investigate critical exculpatory evidence of actual innocence violating Appellant's constitutional rights under 6th and 14th Amendments to U.S. Constitution.

(Appellant's Brief, Ex. 17 to Return of Writ, Doc. No. 14.)   The court of appeals affirmed the judgment.  *State v. Kaeding*, No. C-080803 (Ohio App. 1st Dist. Nov. 25, 2009)(unreported; copy at Ex. 19, Return of Writ, Doc. No. 14, PageID 447-449).   The Ohio Supreme Court declined to hear Kaeding's appeal.  *State v. Kaeding*, 124 Ohio St. 3d 1509 (2010).

On January 18, 2008, Kaeding filed a delayed application to reopen his direct appeal under Ohio R. App. P. 26(B)(Return of Writ, Ex. 28, PageID 492-535).   The court of appeals denied the application as untimely (Entry, Ex. 31 to Return of Writ, Doc. No. 14.)   Kaeding did not appeal to the Ohio Supreme Court.

On January 24, 2011, Kaeding filed a Motion for Relief from Judgment pursuant to Ohio Revised Code § 2953.23, Ohio R. Civ. P. 60(B), and the Civil Rights Act of 1991 (Return of Writ, Doc. No. 14, Ex. 32, PageID 545-610).   The Common Pleas Court overruled that on March 28, 2011 (Return of Writ, Doc. No. 14, Ex. 35, PageID 630).   Kaeding appealed to the Hamilton County Court of Appeals which affirmed the trial court, holding as follows:

> We overrule the assignments of error because the common pleas court had no jurisdiction to entertain Kaeding's motion.
>
> Kaeding moved for relief from his convictions "pursuant to [R.C.] 2953.23 and Civil Rule* * * 60(B)." But Civ.R. 60(B) governs the proceedings upon a motion seeking relief from a judgment entered ·in a civil action. See Civ.R. 1(A). Crim.R. 57(B) permits a court in a criminal matter to "look to the rules of civil procedure" only "if no rule of criminal procedure exists." Crim.R. 35 governs the proceedings upon a petition under R.C. 2953.21 et seq. for postconviction re1ief. And the postconviction statutes provide "the exclusive remedy by which a person may bring a collateral challenge to the validity of a conviction or sentence in a criminal case." R.C. 2953.21(J). Therefore, the common pleas court should

7

have reviewed Kaeding's "motion" as a postconviction petition under the standards provided by R.C. 2953.21 et seq. *See State v. Schlee*, 117 Ohio St.3d 153, 2008-0hio-545, 882 N.E.2d 431, ¶ 12. But Kaeding satisfied neither the time restrictions of R.C. 2953.21(A)(2) nor the jurisdictional requirements of R.C. 2953.23. Therefore. R.C. 2953.21 et seq. did not confer on the common pleas court jurisdiction to entertain Kaeding's postconviction claims on their merits.

Finally, a trial court retains jurisdiction to correct a void judgment. *See State ex ret. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-0hio-5795, 856 N.E.2d 263, ¶18-19. But the Double Jeopardy Clause did not bar Kaeding's rape prosecutions. *See State v. Martello*, 97 Ohio St.3d 398, 2002-0hio-6661, 780 N.E.2d 250. And neither the claimed prosecutorial misconduct nor trial counsel's alleged ineffectiveness, even if demonstrated, would have rendered Kaeding's judgment of conviction void.

*State v. Kaeding,* No. C-110217 (Ohio App. 1ˢᵗ Dist. Dec. 7, 2011)(unreported; copy at Supp. Return of Writ, Doc. No. 31, Ex. 4, PageID 1641).   Kaeding, in satisfaction of the exhaustion requirement, appealed to the Ohio Supreme Court, which declined to exercise jurisdiction.   *State v. Kaeding,* 131 Ohio St. 3d 1486 (2012).   As noted above, the case then became ripe upon Kaeding's filing a Traverse to the Supplemental Return.

**Motion for Evidentiary Hearing**

Kaeding seeks a hearing "on his constitutional claims" and "his claim of actual innocence." (Motion, Doc. No. 35, PageID 1725).   He asserts the hearing "will also show that no further proceedings or pleadings in this Court will be needed as the trial Court lacked jurisdiction *ab initio* over the subject matter/person of this Petitioner to in essence reprosecute him on any crime which

required sexual contact with the alleged victim, K.J.I.[1] allegedly occurring prior to 11-30-2004 when this Petitioner was found not guilty of any sexual activity with this same alleged victim by her own testimony resulting in a finding of not guilty to that charge."   *Id*. at PageID 1725.

As authority for an evidentiary hearing, Kaeding relies on the Supreme Court's decision in *Townsend v. Sain*, 372 U.S. 293, 313 (1963).   The standards for granting an evidentiary hearing were completely revamped by Congress in 1996 in the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA").   28 U.S.C. §2254(e) as adopted by the AEDPA provides:

> (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.
>
> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that
>
> > (A) the claim relies on
> >
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > >
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B) the facts underlying the claim would be sufficient to

---

1 Kaeding filed the Motion with the name of the victim included in full.   The Court has ordered the unredacted original sealed.

> establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Under §2254(e)(1), a state court's findings of fact are presumed correct and may be rebutted by the petitioner only by clear and convincing evidence to the contrary. *Cornwell v. Bradshaw*, 559 F.3d 398, 405 (6th Cir. 2009); *Mitchell v. Mason,* 325 F.3d 732, 737-38 (6th Cir. 2003); *Warren v. Smith,* 161 F.3d 358, 360-61 (6th Cir. 1998).   This statutory presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records. *Girts v. Yanai,* 501 F.3d 743, 749 (6th Cir. 2007); *Mason v. Mitchell,* 320 F.3d 604, 614 (6th Cir. 2003); *Brumley v. Wingard,* 269 F.3d 629, 637 (6th Cir. 2001), citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981).   The federal courts give fresh review to claims not adjudicated on the merits in state court but still defer to relevant state court findings of fact. *Couch v. Booker*, 632 F.3d 241, 244 (6th Cir. 2011), citing *Williams v. Coyle*, 260 F.3d 684, 706 (6th Cir. 2001) and 28 U.S.C. § 2254(e)(1).   "Nothing in Sec. 2254(d)(2) suggests we defer to a state court's factual findings only if the state court held a hearing on the issue."  *Cowans v. Bagley*, 639 F.3d 241, 248 (6th Cir. 2011).

The decision to grant an evidentiary hearing, even if permitted by § 2254(e)(2), is committed to the discretion of the district court.  *Schriro v.  Landrigan*, 550 U.S. 465, 473 (2007).  Because of the deferential standard in §2254(d)(1) and other limitations on granting the writ in the AEDPA, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  *Id.*   at 474

In *Cullen v. Pinholster,* 563 U.S. ___, 131 S.Ct. 1388 (2011), Supreme Court held that a federal court's review of a state court decision under 28 U.S.C. § 2254(d)(1) is strictly limited to

"review of the state court record," and that evidence acquired through use of an evidentiary hearing may not be considered. *Id.* at 1399. The Supreme Court further stated that section 2254(e)(2) only "continues to have force where Section 2254(d)(1) does not bar federal habeas relief." *Id.* at 1401.

With respect to Ground Six, the collateral estoppel claim, Kaeding seeks to have "all proffered documents . . . examined and authenticated." (Motion, Doc. No. 35, PageID 1733). He also wishes the Court to hear live testimony from the parole hearing officer as to why she ruled the way she did and testimony from the victim about what her testimony was in the parole revocation hearing. *Id.* at PageID 1733-1734.

With respect to the claim of prosecutorial misconduct (Ground One), Petitioner refers to exhibits filed with his Petition. He wishes to compel the prosecutor to testify why he did not include affidavits from Detective Konicki in discovery and to compel the victim to testify why her story keeps changing. *Id.* at PageID 1739-1740.

With respect to his claims of ineffective assistance of trial counsel (Ground Two) and ineffective assistance of appellate counsel (Ground Three), he wishes to cross-examine his own attorneys. *Id.* at PageID 1741. Secondly, he wishes to call Dwayne K. Owens and Lisa Wiley-Martinez, witnesses he asserts he identified to his trial attorney who were available to testify at trial but were not called. *Id.* at 1744-1749.

Kaeding also desires to obtain live testimony from Lucille Moore, the grandmother of two of his children, about a conversation she allegedly overheard between the victim and the prosecutor after trial. *Id.* at 1762. He wishes to present a lease for the property which is the alleged crime scene, although he does not say how he intends to present the lease. *Id.* at 1765. He wishes to elicit testimony from some unnamed person or the manager of the crime scene

11

apartment that no one was living in the apartment in April, 2003. *Id.* at PageID 1766. Without naming them, he asserts the victim's maternal and paternal grandmothers are still living and could be called at an evidentiary hearing to contradict the victim's testimony that she remembered when the offenses occurred with reference to the death of her grandmother. He asserts that his exhibits and all of the evidence he intends to elicit at the evidentiary hearing will also establish his actual innocence, thereby excusing any prior procedural defaults. *Id.* at PageID 1767.

Kaeding's Motion for Evidentiary Hearing does not show that he can satisfy the standards of 28 U.S.C. § 2254(e)(2) or that the decisions of the Ohio courts on his claims are contrary to or an objectively unreasonable application of clearly established Supreme Court law. The Motion for Evidentiary Hearing is therefore denied.

## Motion to Conduct Additional Discovery

Kaeding has also moved to conduct additional discovery (Doc. No. 40) which the Warden opposes (Doc. No. 42). To conduct the discovery, Kaeding requests funding under 18 U.S.C. § 3006A to hire Marshall Investigations at $750 and also appointment of counsel. *Id.* at PageID 1780. Kaeding avers the purpose of additional discovery is to support his claim of ineffective assistance of trial counsel, his claim of actual innocence, his claim that his right to present a complete defense was violated, his claim that the prosecutor failed to correct "false testimony by finding out exactly who, if anyone, was in that apartment at 1560-1 Tremont Avenue in April of 2003." (Motion, Doc. No. 40, PageID 1782). He wants the investigator to get information from Model Management, the company that he alleges owned the building in 2003, and to interview whoever lived there. He also wants additional discovery into the police report of the female

12

officer who transported the victim on June 30, 2005, alleging this will show perjury and a verbatim transcript of the testimony used in the parole revocation proceeding on November 30, 2004.

A habeas petitioner is not entitled to discovery as a matter of course, but only upon a fact-specific showing of good cause and in the Court's exercise of discretion. Rule 6(a), Rules Governing §2254 Cases; *Bracy v. Gramley*, 520 U.S. 899 (1997); *Harris v. Nelson*, 394 U.S. 286 (1969); *Byrd v. Collins*, 209 F.3d 486, 515-16 (6th Cir. 2000). Before determining whether discovery is warranted, the Court must first identify the essential elements of the claim on which discovery is sought. *Bracy*, 520 U.S. at 904, *citing United States v. Armstrong*, 517 U.S. 456, 468 (1996). The burden of demonstrating the materiality of the information requested is on the moving party. *Stanford v. Parker*, 266 F.3d 442 (6th Cir. 2001), *citing Murphy v. Johnson,* 205 F.3rd 809, 813-15 (5th Cir. 2000). "Even in a death penalty case, 'bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or require an evidentiary hearing.'" *Bowling v. Parker*, 344 F.3d 487 (6th Cir. 2003)(*quoting Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).

Rule 6 does not "sanction fishing expeditions based on a petitioner's conclusory allegations." *Williams v. Bagley,* 380 F.3d 932, 974, (6th Cir. 2004), *citing Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997); *see also Stanford*, 266 F.3d at 460. "Conclusory allegations are not enough to warrant discovery under [Rule 6]; the petitioner must set forth specific allegations of fact." *Williams,* 380 F.3d at 974*, citing Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994).

With respect to an attempt to obtain further information from the building owner and trying to find who might have lived at the crime scene in April, 2003, or the content of the police officer's report, Petitioner's request is speculative. With respect to what happened at the parole hearing, Kaeding does not represent that a recording was made and the critical question is not what the

13

victim said, but, according to Kaeding's collateral estoppel theory, what the parole officer decided.

Kaeding has not demonstrated his entitlement to discovery and the Motion is denied.

## Analysis of the Grounds for Relief

### Ground One:   Prosecutorial Misconduct

In his First Ground for Relief, Kaeding asserts the prosecutor committed misconduct in the

following ways, referred to hereinafter as sub-claims one through six:

1.      Referring to Kaeding as a pedophile in closing argument (Petition, Doc. No. 1, PageID 38);

2.      Referring to Kaeding's prior conviction in closing argument.   *Id*.   at PageID 39.

3.      Lying to the jury about when the victim's mother met Kaeding.   *Id*.   at PageID 39-40.

4.      Suborning perjury from Detective Konicki about when the offenses occurred.   *Id*.   at
        PageID 40.

5.      Violating the doctrine of collateral estoppel by obtaining an indictment.   *Id*.   at PageID
        41.

6.      Suppressing a post-trial recantation from the victim.   *Id*. at PageID 41.

## Sub-claims One and Two:   Misconduct in Closing Argument

In sub-claims one and two, Kaeding argues the prosecutor committed misconduct during his closing argument by calling Kaeding a pedophile and by referring to his prior conviction. Respondent concedes these claims are preserved for merit review in habeas because they were raised on direct appeal. These sub-claims were combined as Kaeding's first assignment of error on which the court of appeals held:

> The first assignment of error alleges that prosecutorial misconduct in the closing argument denied Kaeding's rights to due process and a fair trial.
>
> Prosecutors are normally entitled to a certain degree of latitude in closing argument. *See State v. Smith* (1984), 14 Ohio St. 3d 13, 470 N.E. 2d 883. A defendant must support a claim of prosecutorial misconduct in closing argument by showing that the prosecutor's remarks were improper and that they prejudicially affected the defendant's substantial rights. See *Id.*; *State v. Hessler*, 90 Ohio St. 3d 108, 2000-Ohio-30, 734 N.E. 2d 1237. The remarks must not be viewed in isolation, but in light of the entire closing argument. See *State v. Keenan* (1993), 66 Ohio St. 3d 402, 613 N.E. 2d 203. "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982), 455 U.S. 209, 102 S. Ct. 940. The prosecutor's conduct cannot be grounds for error unless the conduct deprives the defendant of a fair trial. See *State v. Keenan, supra*; *State v. Williams*, 1st Dist. Nos. C-060631, 2007-Ohio-5577.
>
> Kaeding argues that the prosecutor committed misconduct in the closing argument by calling Kaeding a pedophile and engaging in other "name calling," and by referring to Kaeding's relationship with another young girl who had had Kaeding's child when she was 15. Following a review of the record, we hold that none of the instances of alleged prosecutorial misconduct was so egregious as to affect Kaeding's substantial rights or to deny him a fair trial. The first assignment of error is overruled.

*State v. Kaeding*, No. C-060573 (Ohio App. 1st Dist. Nov. 7, 2007)(unreported; copy at Return of Writ, Ex. 8, PageID 323.)

15

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.   28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 141 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

On habeas corpus review, the standard to be applied to claims of prosecutorial misconduct is whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process," *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainwright,* 477 U.S. 168 (1986); *Wogenstahl v. Mitchell*, 668 F.3d 307, 327-328 (6th Cir.  2012), *citing Smith v. Mitchell,* 567 F.3d 246, 265 (6th Cir. 2009), c*ert denied,* ___ U.S. ___, 130 S. Ct. 742 (2009); *Bates v. Bell*, 402 F.3d 635, 640-41 (6th Cir. 2005)(citations omitted); *Kincade v. Sparkman*, 175 F.3d 444 (6th Cir. 1999) (citations omitted) or whether it was "so egregious as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117 (6th Cir. 1979) (citations omitted); *accord Summitt v. Bordenkircher*, 608 F.2d 247 (6th Cir. 1979), *aff'd sub nom*, *Watkins v. Sowders*, 449 U.S. 341 (1981); *Stumbo v. Seabold*, 704 F.2d 910 (6th Cir. 1983).   The court must examine the fairness of the trial, not the culpability of the prosecutor. *Serra v. Michigan Department of Corrections,* 4 F.3d 1348, 1355 (6th Cir. 1993)(*quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982). In *Serra*, the Sixth Circuit identified factors to be weighed in considering prosecutorial misconduct:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they

16

> were deliberately or accidentally placed before the jury, and the
> strength of the competent proof to establish the guilt of the accused.

*Id.,* at 1355-56 (quoting *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982).   The misconduct must be so gross as probably to prejudice the defendant. *Prichett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), *cert. denied*, 522 U.S. 1001 (1997); *United States v. Ashworth,* 836 F.2d 260, 267 (6th Cir. 1988).   Claims of prosecutorial misconduct are reviewed deferentially on habeas review. *Thompkins v. Berghuis,* 547 F.3d 572 (6th Cir. 2008), rev'd on other grounds, ___ U.S. ___, 130 S. Ct. 2250 (2010), citing *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004), *cert. denied*, 544 U.S. 921 (2005).

In context there was nothing improper with the prosecutor's remarks.   The jury had heard Kaeding's recorded statement in which he insisted that, although he might befriend young girls, he would not engage in sex with them.   Proof had been offered that he had indeed had a child by another minor girl.   While the term "pedophile" in a clinical sense refers to persons who have a fixed sexual preference for pre-pubescent children[2] (which Kaeding's victims were not), the term is frequently used in common parlance to refer to those who sexually abuse minors of any age.[3]

Kaeding has not demonstrated that the court of appeals ruling is contrary to or an objectively unreasonable application of clearly established Supreme Court precedent cited above. His first two sub-claims should therefore be dismissed with prejudice.

**Sub-Claim Three:   Lying to the Jury**

---

2 Diagnostic and Statistical Manual of Mental Disorders, Fourth ed., Text Revision § 302.2.
3 The New York Times has repeatedly over the last decade referred to Catholic priest sexual abusers as "pedophiles," but the large majority of those abusers had post-pubescent victims. See The Nature and Scope of the Problem of Sexual Abuse of Minors by Catholic Priests and Deacons in the United States, A Research Study by the John Jay College of Criminal Justice, on line at www.usccb.org.

Respondent argues that sub-claims three through six are procedurally defaulted. The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000) (citations omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright,* 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963). *Coleman,* 501 U.S. at 724.

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright v. Sykes*, 433 U. S. 72 (1977). *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985). Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). "Even if the state court failed to reject a claim on a procedural ground,

the petitioner is also in procedural default 'by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate procedures.'" *Thompson v. Bell*, 580 F.3d 423, 427 (6th Cir. 2009), *citing Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006), *quoting O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010), *cert. denied sub. nom. Eley v. Houk*, ___ U.S. ___, 131 S. Ct. 822 (2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,*785 F.2d at 138.

The third sub-claim – that the prosecutor lied to the jury about when the victim's mother

said she first met Kaeding – is based on the trial transcript (See Petition, Doc. No. 1, PageID 39-40).   Therefore this sub-claim of prosecutorial misconduct could have been raised on direct appeal.   Under Ohio law a claim based on the record and therefore available on direct appeal which is not presented in that proceeding is barred by the Ohio doctrine of *res judicata* from being presented in any other Ohio proceeding, including a petition for post-conviction relief under Ohio Revised Code § 2953.21.   *State v. Perry,* 10 Ohio St. 2d 175, 181 (1967).   The Sixth Circuit has repeatedly held that the *res judicata* doctrine is an adequate and independent state ground.   *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F. 3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994); *Van Hook v. Anderson*, 127 F. Supp. 2d 899 (S.D. Ohio 2001).   Because Kaeding failed to present this sub-claim on direct appeal, he has procedurally defaulted it.

Ineffective assistance of appellate counsel can excuse a procedural default.   However, before it can have that effect, a habeas petitioner must properly present the ineffective assistance of appellate counsel claim to the state courts. *Edwards v. Carpenter,* 529 U.S. 446 (2000).   Under Ohio law, an ineffective assistance of appellate counsel claim must be presented by application to reopen the direct appeal under Ohio R. App. 26(B).   Kaeding made an ineffective assistance of appellate counsel claim related to the omission of this assignment of error on direct appeal, but his application for reopening was denied as untimely.   (See Procedural History, supra, referencing Exhibit 31 to the Return of Writ.)   Since 1996, "Ohio law has provided sufficient guidance on what constitutes a 'good cause' for a late filing under Rule 26(B)," and "'the time constraints of Rule 26(B) [have been] firmly established and regularly followed.'" *Wogenstahl v. Mitchell*, 668 F.3d 307, 322 (6th Cir.   2012), quoting *Hoffner v. Bradshaw*, 622 F.3d 487, 504-05 (6th Cir. 2010)

(*quoting Parker v. Bagley*, 543 F.3d 859, 861 (6th Cir. 2008)). Thus, Rule 26(B) is an adequate and independent ground on which to find procedural default. *Id.*

As the Warden points out, Kaeding committed an additional procedural default of this claim by not appealing to the Ohio Supreme Court from denial of his 26(B) application. Therefore the third sub-claim of prosecutorial misconduct is procedurally defaulted and must be dismissed.

**Fourth Sub-Claim:   Suborning Perjury**

The fourth sub-claim of prosecutorial misconduct is that the prosecutor suborned perjury by allowing Detective Konicki to perjure himself at trial by testifying that the two rapes occurred on one date in April, 2003, when he had previously sworn that they had occurred on separate dates in April, 2002.   The Petition does not contain any record reference to the portion of Detective Konicki's testimony which Kaeding asserts is perjurious, but his direct testimony begins at PageID 981.   In testifying about his interview with Kaeding on June 30, 2005, he was asked if he was certain the incident about which Kaeding was speaking had occurred two years prior (i.e., in 2003).   PageID 992.   The trial judge then sustained an objection.   *Id.*   At no point in his direct examination did Detective Konicki state that the offenses occurred together on a date certain in 2003.   Indeed, he could not have done so because he wasn't present.

Kaeding attempts to prove that Konicki perjured himself by referring to the Affidavits filed in support of a criminal complaint against Kaeding in the Hamilton County Municipal Court on June 30, 2005.   These are Exhibits A and B to the Petition (Doc. No. 1, PageID 86-87.)   They aver that Kaeding had vaginal intercourse with the victim "on or about April 1 and April 8, 2002, at

21

a time when the victim was twelve years old.   They are sworn as required by Ohio R. Crim. P. 3.

The facts alleged in Exhibits A and B are inconsistent with the facts developed at trial from other witnesses, but Konicki did not testify about particular dates.   Nor has Kaeding shown that Konicki perjured himself when he swore to the facts in the two complaints.   The inconsistencies could have been used to cross-examine Konicki because the criminal complaints were a matter of public record in the same case.   But that would not likely have made any difference because an experienced trial attorney knows that there are likely to be mistakes in a complaint filed by a police officer in the morning who has been up late in the night dealing with the offense.   Like so many habeas petitioners, Kaeding makes an inconsistency in the statement of facts into suborned perjury, but this Court finds the inconsistency immaterial, given that the correct dates as Konicki learned them to be were presented at trial.

In any event, this claim of prosecutorial misconduct is also procedurally defaulted on the same basis as the third sub-claim:   it could have been presented on direct appeal but was not.   It should therefore be dismissed with prejudice.

### Fifth Sub-Claim:   Violating the Doctrine of Collateral Estoppel

The fifth sub-claim of prosecutorial misconduct is that the prosecutor violated the doctrine of collateral estoppel by obtaining the indictment.   This sub-claim is procedurally defaulted on the same basis as sub-claims three and four and should therefore be dismissed with prejudice.

### Sixth Sub-Claim:   Suppressing the Victim's Recantation

The sixth sub-claim is that the prosecutor committed misconduct by "suppressing" a post-trial statement by the victim recanting her trial testimony by stating that the sexual conduct occurred in 2004 instead of 2003.   This is of course material because she would have been thirteen in 2004 and the penalties for sexual misconduct with a minor change radically when the minor reaches thirteen years of age.   This sub-claim could not have been presented on direct appeal because it depends on evidence outside the record, to wit, the affidavit of Lucille Moore, which was first presented in Kaeding's first post-conviction relief petition.

The Warden argues this sub-claim is also procedurally defaulted because it was presented as "a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), and not a claim of prosecutorial misconduct, which is a distinct legal claim."   The Court disagrees.   In fact a *Brady* claim is the prototypical claim of prosecutorial misconduct.   This sub-claim is not procedurally defaulted.

The trial court decided this claim on the merits by finding Ms. Moore not to be credible because of her relationship with Kaeding.   (Ex. 15 to Return of Writ, Doc. No. 14, PageID 383-384).   The court of appeals affirmed on the merits, holding

> The common pleas court, in denying Kaeding's first postconviction claim discounted Moore's credibility.   We cannot say that the court abused its discretion in doing so. The judge who reviewed Kaeding's postconviction petition had also presided at his trial. Moore was the grandmother of two of Kaeding's children.   And to the extent that the affidavit may be said to provide exculpatory evidence that the victim had been 13 at the time of the rapes, it constituted hearsay. Because Kaeding's first postconviction claim was not supported by outside evidence demonstrating that the prosecution had withheld exculpatory evidence, See *Brady v. Maryland* (1963), 373 U.S. 83, 83 S. Ct. 1194, the court properly denied the claim without an evidentiary hearing.   See R.C. 2953.21(C); *State v. Pankey* (1981), 68 Ohio St.2d 58, 428 N.E.2d 413; *State v. Jackson* (1980),64 Ohio St. 2d 107, 413 N.E. 2d 819.

*State v. Kaeding*, No. C-080803 (Ohio App. 1st Dist. Nov. 25, 2009)(unreported; copy at Ex. 19,

Return of Writ, Doc. No. 14, PageID 448).  Kaeding has not demonstrated that this holding is contrary to or an objectively unreasonable application of the relevant Supreme Court precedent. Sub-claim Six should be dismissed with prejudice on the merits.


### Ground Two: Ineffective Assistance of Trial Counsel


As with the first ground, Kaeding's Second Ground for Relief also includes six sub-claims:

1. Failure to properly admit a residential lease of defense witness Betty Sprecker (Petition, Doc. No. 1, PageID 43-44.)

2. Failure to investigate who was living in the relevant apartment in April, 2003.  *Id*.

3. Failure to investigate other events which anchored the recollection of the victim. *Id*.

4. Failure to call Lisa Martinez and Dwayne Owens as defense witnesses.  *Id*. at PageID 45.

5. Failure to assert the collateral estoppel bar to prosecution.  *Id*. at PageID 46.

6. Failure to uncover evidence that both Detective Konicki and the victim were going to perjure themselves at trial.  *Id*.  at PageID 46-47.


### Sub-Claims One, Two, and Three: The Lease, Other Residents, and Other Memory Anchors


Respondent concedes these claims are preserved for merits review because they were presented in Kaeding's first Petition for Post-Conviction Relief (Return of Writ, Doc. No. 14, Ex. 13, PageID 374-375.)   In the Petition, Kaeding's post-conviction counsel argued that documents and witnesses were "easily obtainable" which could have rebutted the victim's recollection of when her sexual encounter with Kaeding occurred.  *Id*. The trial judge, however, found that the

post-conviction petition was supported by none of this supposedly easily obtainable evidence (Entry, Ex. 15 to Return of Writ, Doc. No. 14, PageID 384.)   The court of appeals affirmed, holding:

> In his second postconviction claim, Kaeding, contended that he had been denied the effective assistance of counsel because his trial counsel had failed to adequately investigate or to present at trial evidence corroborating his defense that he and the victim had met in the summer of 2004, when the victim was 13 years old. At trial, defense counsel extensively cross-examined the victim concerning when Kaeding had lived in the apartment where he had first met the victim, and when a nearby convenience store had closed. In his second postconviction claim, Kaeding asserted that his counsel could have conclusively established that these events had occurred in 2004 by introducing the apartment's 2003 "leasehold" and documents  or testimony showing that the convenience store had closed in 2004. But Kaeding did not provide in support of the claim either the leasehold or evidence concerning the closing of the convenience store. Thus, Kaeding failed to support the claim with outside evidence demonstrating a reasonable probability that, but for defense counsel's failure to present the proposed evidence, the result of Kaeding's trial would have been different. See Strickland v. Washington (1984), 466 U.S. 668, 104 S. Ct. 2052; State v. Bradley (1989), 42 Ohio St. 3d 136, 538 N.E. 2d 373. Accordingly, the court properly denied the claim without an evidentiary hearing. See R.C. 2953.21(C); *Pankey, supra; Jackson, supra.*

*State v. Kaeding,* No. C-080803 (Ohio App. 1st Dist. Nov. 25, 2009)(unreported, copy at Return of Writ, Doc. No. 14, PageID 449).

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the

deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987), *quoting Strickland*, 466 U.S. at 687.

Kaeding has not demonstrated any way in which the First District Court of Appeals decision is contrary to or an objectively unreasonable application of *Strickland* and its Supreme Court progeny.   Given an opportunity by Ohio's post-conviction statute to demonstrate prejudice

from his trial attorney's alleged deficiencies, he failed to produce any evidence of prejudice. Therefore the first three sub-claims of Ground Two should be dismissed with prejudice.

### Fourth Sub-Claim:   Failure to Call Martinez and Owens

Respondent asserts this sub-claim is procedurally defaulted because it was first presented in Kaeding's untimely application to reopen his direct appeal.  (See Return of Writ, Ex. 28, PageID 499.)   As noted above, the untimeliness of the Rule 26(B) Application was held against Kaeding and formed the basis of its dismissal.   As also noted, the Sixth Circuit has repeatedly upheld the timeliness requirement of Rule 26(B) as an adequate and independent state ground for decision.

Moreover, under Ohio law, a claim of ineffective assistance of trial counsel is not properly raised by bringing it in a 26(B) application; that procedure is limited to claims of ineffective assistance of appellate counsel.   Kaeding further procedurally defaulted on this sub-claim by not including it in his first Petition for Post-Conviction Relief where it could have been raised in that it depends on evidence outside the record, to wit, what Martinez and Owens would have testified to.

The Fourth Sub-claim should be dismissed with prejudice.

### Fifth Sub-Claim:   Failure to Argue Collateral Estoppel

This sub-claim is procedurally defaulted on the same basis as the Fourth Sub-claim and should be dismissed with prejudice on that basis.

**Sixth Sub-Claim:   Failure to Uncover Perjury**

This sub-claim was presented for the first time in Kaeding's second petition for post-conviction relief.   As noted above, the court of appeals affirmed dismissal on the grounds that the petition was untimely and the trial court lacked jurisdiction to entertain it.   *State v. Kaeding,* No. C-110217 (Ohio App. 1st Dist. Dec. 7, 2011)(unreported; copy at Supp. Return of Writ, Doc. No. 31, Ex. 4, PageID 1641).

These are adequate state grounds for decision.   Undoubtedly States have an important interest in the finality of their criminal judgments which they may enforce by placing time limits on proceedings for post-conviction relief and limiting the jurisdiction of trial courts to consider such requests.   Moreover, these rules in Ohio are completely independent of the federal law content of the questions being raised:   the time limits in Ohio Revised Code § 2953.21 and the jurisdictional limits in Ohio Revised Code § 2953.23 apply whether it is state or federal constitutional claims which are being raised.

Because this sub-claim is procedurally defaulted, it should be dismissed with prejudice.

**Ground Three:   Ineffective Assistance of Appellate Counsel**

As explained at length above, Kaeding procedurally defaulted on his claims of ineffective assistance of appellate counsel both by filing his Application for Reopening under Rule 26(B) in an untimely manner and by failing to appeal from the denial to the Ohio Supreme Court.   Ground Three for Relief should be dismissed with prejudice.

## Ground Four:   Insufficiency of the Evidence

In his Fourth Ground for Relief, Petitioner asserts he stands convicted on insufficient evidence.

Kaeding did not raise an insufficiency of the evidence claim on direct appeal, but instead asserted the conviction was against the manifest weight of the evidence.   In *State v. Thompkins,* 78 Ohio St. 3d 380 (1997)*,* the Ohio Supreme Court reaffirmed the important distinction between appellate review for insufficiency of the evidence and review on the claim that the conviction is against the   manifest weight of the evidence.      It held:

> In essence, sufficiency is a test of adequacy.   Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process.    *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102, 387 S. Ct. 2211, 2220, 72 L.Ed.2d 652, 663, *citing Jackson v. Virginia* (1979), 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed.2d 560.   Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence.   *Robinson, supra*, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149.   Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.   It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.   Weight is not a question of mathematics, but depends on its effect in inducing belief."   (Emphasis added.)
>
> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony.   *Tibbs*, 457 U.S. at 42, 102 S. Ct. at 2218, 72 L.Ed.2d at 661.   See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485

> N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

78 Ohio St. 3d at 387. In *State v. Martin*, 20 Ohio App. 3d 172 (Hamilton Cty. 1983)(cited approvingly by the Supreme Court in *Thompkins*), Judge Robert Black contrasted the manifest weight of the evidence claim:

> In considering the claim that the conviction was against the manifest weight of the evidence, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*Id*. at ¶3 of the syllabus. The consequences of the distinction are important for a criminal defendant. The State may retry a case reversed on the manifest weight of the evidence; retrial of a conviction reversed for insufficiency of the evidence is barred by the Double Jeopardy Clause. *Tibbs v. Florida*, 457 U.S. 31, 41(1982).

Nevertheless, a state court finding that the verdict is not against the manifest weight of the evidence implicitly also holds that there is sufficient evidence. *Nash v. Eberlin,* 258 Fed. Appx. 761, 2007 U.S. App. LEXIS 29645 (6th Cir. Dec. 14, 2007); *Ross v. Miller*, No. 1:10-cv-1185, 2011 U.S. Dist. LEXIS 65082 (N.D. Ohio May 10, 2011)(White, M.J.); *Hughes v. Warden,* No. 1:10-cv-091, 2011 U.S. Dist. LEXIS 54131 (S.D. Ohio Apr. 27, 2011)(Merz, M.J.).

The court of appeals in deciding Kaeding's manifest weight assignment of error, held as follows:

Kaeding's second assignment of error alleges that his convictions were against the manifest weight of the evidence. To reverse a conviction based upon the manifest weight of the evidence, we must determine that the jury, in resolving conflicts in the evidence, clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[Footnote omitted.] The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. [Footnote omitted.]

Kaeding essentially argues that the victim's testimony was not credible. Kaeding denied having sex with the victim. He also presented evidence that tended to show that if any sexual activity had occurred, it would have had to have taken place in 2004 when the victim was 13, not in 2003 when she was 12. Kaeding tried to show that the sex acts could not have occurred in 2003 by attempting to tie them to the birth of his child by another woman in 2004, and to the time that he had moved into Midge's apartment, which Kaeding contended was in 2004. Kaeding argues that the credible evidence showed that he did not even meet the victim until 2004.

The victim testified that she was sure that the sexual al activity had taken place in 2003 because that was the year that her grandmother had died, and she remembered that the sex had occurred near her mother's birthday in April of that year. The victim also testified about a photograph that Kaeding had taken of her in 2003 when she was 12.

Issues of credibility were for the jury and it believed the victim's testimony. The second assignment of error is overruled.

*State v. Kaeding*, No. C-060573 (Ohio App. 1st Dist. Nov. 7, 2007)(unreported; copy at Return of

Writ, Doc. No. 14, Ex. 8, PageID 323-324.)

The Supreme Court has recently held:

We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565

31

> U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062 (2012)(*per curiam*).   Kaeding has not overcome this required two levels of deference which we must give to the state court decision. Therefore the Fourth Ground for Relief should be dismissed with prejudice on the merits.

### Ground Five:   Prosecutor's Withholding of Exculpatory Evidence

Kaeding's Fifth Ground for Relief is that the prosecutor withheld exculpatory evidence in violation of his duty under *Brady v. Maryland*, 373 U.S. 83 (1963).   There are four sub-claims:

1.   Failure to disclose the two criminal complaints made by Detective Konicki on June 30, 2005 (Petition, Doc. No. 1, PageID 55.

2.   Failure to disclose the police report of the police officers who were present at the BP station on the night of the arrest (June 29-30, 2005).   *Id.*

3.   Failure to disclose the victim's post-trial recantation. *Id.*   at PageID 56.

4.   Failure to disclose the victim's testimony at Kaeding's November 30, 2004, parole hearing. *Id.*

The first sub-claim was presented for the first time in Kaeding's second petition for post-conviction relief.   For the reasons already given, claims made in that petition are procedurally defaulted.

The second sub-claim is procedurally defaulted on the same basis as the first sub-claim. Additionally, these are public records in this very same case and are therefore not *Brady* material. *Storey v. Vasbinder*, 657 F.3d 372, 380 (6th Cir.), cert. denied. ___ U.S. ___, 132 S. Ct. 1760 (2011), citing *Owens v. Guida*, 549 F.3d 399, 418 (6th Cir. 2008).

The third sub-claim was presented in the first petition for post-conviction relief. However, as already noted above, the Ohio courts denied the claim on the merits because no probative evidence was offered in support.  The only evidence attached to the petition was the Lucille Moore affidavit.  No copy of the supposedly exculpatory police report was attached, although it could have been readily obtained from police under the Ohio Public Records Act.  The decision of the Ohio courts as to this piece of evidence is neither contrary to nor an objectively unreasonable application of *Brady* and its progeny.

The Warden asserts the fourth sub-claim is procedurally defaulted because it was never presented to the state courts.  Without searching the record to determine if this is correct, the Court can readily conclude that the victim's statements at the parole hearing is not *Brady* material. *Brady* "is concerned only with cases in which the government possesses information which the defendant does not, and the government's failure to disclose the information deprives the defendant of a fair trial."  *United States v. Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994).  There is no *Brady* violation where the defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information or where the evidence is available to the defendant from another source.  *United States v. Clark*, 928 F.2d 733, 738 (6th Cir.), cert. denied, 502 U.S. 846 (1991).  This includes where the information is available from public records, e.g., of a witness's criminal record.  *Storey v. Vasbinder*, 657 F.3d 372, 380 (6th Cir. 2011), citing *Owens v. Guida*, 549 F.3d 399, 418 (6th Cir. 2008).  No *Brady* violation occurs where the

33

government does not disclose witness statements but the defendant knew that the witness had potentially exculpatory information. *United States v. Todd,* 920 F.2d 399, 405 (6th Cir. 1990). Kaeding knew at the time of trial what the victim had testified to at the parole hearing. The fact that he did not have a typewritten transcript is immaterial.

The Fifth Ground for Relief should therefore be dismissed with prejudice.

## Ground Six:    Collateral Estoppel

In his Sixth Ground for Relief, Kaeding asserts the Double Jeopardy Clause, and particularly the collateral estoppel application of double jeopardy, barred his trial and conviction.

Kaeding did not raise this claim at trial, on direct appeal, or in his first post-conviction relief petition. He first attempted to raise it in his Application for Reopening under Ohio R. App. P. 26(B), but that Application was dismissed as untimely and the Sixth Circuit law upholding such dismissals is cited above.

Kaeding attempts to avoid the procedural defaults by claiming that a prosecution which violates the Double Jeopardy Clause somehow deprives the trial court which hears the case of jurisdiction *ab initio*. He presents no law to that effect. It would indeed have been the Hamilton County Common Pleas Court which would have been called upon to declare the Double Jeopardy bar in the first place, something it could not have done if it lacked jurisdiction.

Thus this Sixth Ground for Relief is procedurally defaulted and should be dismissed with prejudice on that basis. But even if Kaeding could avoid the procedural bar, the claim is without merit.

The Double Jeopardy Clause of the United States Constitution affords a defendant three basic protections:

> It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 165 (1977), *quoting North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).  The Double Jeopardy Clause of the Fifth Amendment was held to be applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 794 (1969). Collateral estoppel, as embodied in the Fifth Amendment Double Jeopardy Clause, forbids retrial of an issue of fact conclusively determined in a prior trial.  *Ashe v. Swenson*, 397 U.S. 436 (1970).

As Kaeding makes this claim in his Petition, it is that a hearing officer/ALJ in a quasi-judicial hearing on November 30, 2004, determined that "no sex occurred" between Kaeding and the victim in this case prior to that date (Petition, Doc. No. 1, PageID 57.)   Kaeding then states he intends to brief this issue fully in his traverse.  *Id*.  He attaches to the Petition Exhibits F, G, H, I, P, Q, and R as proof of this claim. *Id*.   at PageID 78.

Exhibit F is an Ohio Adult Parole Authority Waiver of Appearance at Release Violation Sanction Hearing.   At the bottom Kaeding has written: "Δ would like the Hearing Officer to know that he is absolutely <u>not</u> guilty of the attempting to have or having sexual contact w/ [J.I.] on or about 7-21-04.   He did go to where she was living to give her money @ her request.   She was Δ's former babysitting [illegible] there to give her money and was jumped and robbed by several people. [illegible]   He fled.   He claims that J. was threatened that if she didn't [illegible] coming to have sex with her for $20, they would beat her.   Δ is waiving the hearing."

Exhibit G is purportedly page 12 of the relevant violation report.   At the place on the Exhibit starred by Kaeding, the report states:

> On 8/13/04, this officer went to the address in Northside and spoke with the alleged minor victim. She indicated that the subject had

35

given her approximately $300 and taken her to dinner. She said the subject called her "his little princess." She stated that she open-mouthed french kissed the subject. She also indicated that the subject had given her alcohol and marijuana. The 13-year-old alleged minor victim denied having sexual intercourse with the subject, but stated that her 17-year-old sister had sex with the subject. She stated that she did not know where the subject was and could not contact him because his cell phone was off.

(PageID 95.)

Exhibit H is page 13 of the same report and includes the finding on which Kaeding relies:

On 11/29/04, the subject's VSP Hearing was held as scheduled. The subject was found guilty on some rules and some rules were dismissed. The subject signed a waiver of appearance and the subject admitted to Rule 1, Count 2, Rule 2, Rule 3 and Rule 15 and denied Rule 1, Count 1, Rule 5 and Rule 17.   Per Hearing Officer Jennifer Jayjohn, the subject was found non-guilty on Rule 1, Count 1, based on Definitions of Sexual Contact in the Ohio Revised Code and the alleged victim's statements to the Parole Officer. Guilt was established on Violations of Rules 1, Count 2, Rule 2, Rule 3, Rule 5, Rule 15 and Rule 17. It should be noted that the subject refused to sign the Notice of Findings at the time of his hearing.

(PageID 96.)

Thus the issue posed for the hearing officer was whether Kaeding engaged in sexual conduct or sexual contact with J.I. on July 21, 2004.   Ohio Revised Code § 2907.01 defines "sexual contact" as follows:

(B) "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

Thus "open-mouthed French kissing" is not sexual contact in Ohio.

Collateral estoppel precludes relitigation of issues of fact or law actually litigated and

36

decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action.  *Taylor v. Sturgell,* 553 U.S. 880 (2008); *Stern v. Mascio*, 262 F. 3rd 600, 608 (6th Cir. 2001), quoting *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F. 2nd 658, 660-61 (6th Cir. 1990).  The issue preclusion doctrine applies only if "(1) the precise issue raised in the present case [was] raised and actually litigated in the prior proceeding; (2) determination of the issue [was] necessary to the outcome of the prior proceeding; (3) the prior proceeding . . . resulted in a final judgment on the merits; and (4) the party against whom [issue preclusion] is sought . . . had a full and fair opportunity to litigate the issue in the prior proceedings." *Stern,* 262 F. 3d at 608 (6th Cir. 2001), *quoting Smith v. Securities & Exch. Comm'n,* 129 F. 3rd 356, 362 (6th Cir. 1997)(en banc).

In *Detroit Police Officers Assn. v. Young,* 824 F.2d 512 (6th Cir. 1987), the court noted the prerequisites to collateral estoppel:

> Before the collateral estoppel doctrine may be applied to preclude further judicial review of an issue, four basic criteria must be met:
> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;
> (2) determination of the issue must have been necessary to the outcome of the prior proceeding;
> (3) the prior proceeding must have resulted in a final judgment on the merits; and
> (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Id*. at 515.

Issue preclusion applies "(1) when the issue presently asserted was actually litigated in an earlier trial, (2) when it was actually and necessarily determined by a court of competent jurisdiction, and (3) when preclusion in the second trial does not work an unfairness." *United States v. Berman,* 884 F.2d 916, 922 (6th Cir. 1989)(citation omitted).

37

Applying this law to the current case, the Magistrate Judge notes that the precise issue in the parole proceeding was whether Kaeding engaged in sexual conduct or sexual activity with J.I. on July 21, 2004.   The parole officer was not called upon to decide if there had ever been sexual conduct or sexual activity between these two people before November 30, 2004, and deciding that issue was not necessary to deciding the question before her.   While both parties had a fair opportunity to litigate the matter, it was not actually litigated because the behavior J.I. reported did not constitute a violation of law in Ohio.   Finally, there is no state court judgment involved in the parole proceeding.

In *Ashe v. Swenson, supra,* relied on by Kaeding, the first jury had found the defendant not guilty of armed robbery of one of the victims and the state proposed to retry him as to other victims.   The fact conclusively determined in the first trial was that the defendant was not present at the robbery.   All that was determined in the parole hearing was that there was insufficient proof of sexual conduct or contact on July 21, 2004.   Thus even if this claim were not procedurally defaulted, it should be dismissed with prejudice on the merits.


**Ground Seven:   Conviction Obtained through Use of Known Perjured Testimony**


In his Seventh Ground for Relief, Kaeding claims his conviction was obtained through the knowing use of perjured testimony.   For the reasons given above for rejecting sub-claim four of the First Ground for Relief, this claim is without merit.   It is also procedurally defaulted in that the first time it was presented was in Kaeding's second petition for post-conviction relief which was dismissed by the state courts on adequate and independent state procedural grounds.

**Ground Eight:   Improper Exclusion of Exculpatory Evidence**

In his Eighth Ground for Relief, Kaeding claims he was denied due process – specifically the right to present a complete defense – when the lease to the apartment that was the alleged crime scene was excluded from evidence as a sanction for a discovery violation by trial counsel.

This claim plainly depends on the trial court record and therefore, under Ohio law, should have been raised on direct appeal, but was not.   It is therefore procedurally defaulted.   Moreover, the claim is without merit.   A fair opportunity to present a defense in a criminal case is a constitutional right.   *Baze v. Parker,* 371 F.3d 310, 323 (6th Cir. 2004), *citing Crane v. Kentucky*, 476 U.S. 683, 690 (1986).   Presenting relevant evidence is integral to that right.   *Taylor v. Illinois*, 484 U.S. 400, 409-11 (1988).   Few rights are more fundamental than that of an accused to present witnesses in his own defense.   *Chambers v. Mississippi,* 410 U.S. 284, 302 (1973)(citations omitted).   However, a defendant must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.   *Id.*   Judges have a wide discretion to exclude evidence which is only marginal.   *Crane*, 476 U.S. at 690. The right to present relevant evidence is not unlimited, but subject to reasonable restrictions.   *United States v. Scheffer*, 523 U.S. 303, 308 (1998), and may bow to accommodate other legitimate interests in the criminal trial process.   *Rock v. Arkansas*, 483 U.S. 44, 55 (1987). The right to present a complete defense means that any state evidentiary rules used to exclude evidence cannot be "arbitrary" or "disproportionate to the purpose they are designed to serve." *Wynne v. Renico*, 606 F.3d 867, 870 (6th Cir.   2010) quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998).   There is nothing arbitrary about the discovery rules in Ohio. Finally, trial counsel was able to cross-examine Midge Sprecker extensively about when she

moved into the apartment which was the crime scene.

## Ground Nine:   Improper Evidentiary Rulings

In his Ninth Ground for Relief, Kaeding asserts he was deprived of a fair trial and due process by a number of what he calls evidentiary rulings by the trial court.   The only truly evidentiary matter included in this ground for relief is exclusion of the lease, which has been dealt with under Ground Eight.

Kaeding also claims the trial judge violated his rights by not granting a mistrial when the victim mentioned his prior conviction in her testimony.   The actual mention was of Kaeding's parole officer, but the mention violated an *in limine* agreement that no such reference would be made.

Refusal to grant a mistrial was an assignment of error on direct appeal.   The court of appeals decided this assignment as follows:

> The third assignment of error alleges that the trial court erred in denying Kaeding's motion for a mistrial.
>
> The prosecutor asked the victim on direct examination if she !mew Timothy Tate, The victim answered, "I believe that's his parole - -." Defense counsel interrupted with an objection, The trial court sustained the objection and struck the answer. Outside the presence of the jury, defense counsel moved for a mistrial based on the answer. Tate was Kaeding's parole officer. The prosecutor stated that the victim had been instructed not to say anything about Kaeding having been on parole or in prison. The prosecutor further stated that he had asked the victim about Tate because defense counsel had indicated that he was going to attack the victim's credibility by asking her if she had told Tate about the sex with Kaeding. The court pointed out the problem that defense counsel was creating.   Defense counsel wanted to ask the victim if she had told Tate about the sex. Apparently, the answer was no. But. the

40

court pointed out, the reason that the victim had not told Tate was because Tate was Kaeding's parole officer, and she had not wanted Kaeding to get into trouble. The court noted that if defense counsel asked the question, the victim would be required to answer truthfully about why she did not tell Tate. The trial court overruled the motion for a mistrial.

The grant or denial of a motion for a mistrial is within the trial court's sound discretion. See *State v. Garner*, 74 Ohio St. 3d 49, 1995-Ohio-168, 656 N.E. 2d 623. A jury is presumed to follow the trial court's curative instructions. See *Id.* ; *State v. Henderson* (1988), 39 Ohio St. 3d 24, 528 N.E. 2d 1237. The trial court should declare a mistrial only when the ends of justice so require and a fair trial is no longer possible. See *State v. Garner*, supra; *State v. Franklin* (1991), 62 Ohio St. 3d 118, 580 N.E. 2d 1.

The reference to Kaeding's parole officer was fleeting. The trial court promptly sustained defense counsel's objection and struck the remark. The court did not abuse its discretion in refusing to declare a mistrial. The third assignment of error is overruled.

*State v. Kaeding*, No. C-060573 (Ohio App. 1st Dist. Nov. 7, 2007)(unreported; copy at Return of Writ, Doc. No. 14, Ex. 8, PageID 325).

Kaeding has presented no authority showing this ruling is contrary to or an objectively unreasonable application of clearly established Supreme Court precedent.

Kaeding next claims it was error to instruct the jury on the lesser included offenses which would have been committed had Kaeding had sex with J.I. in 2004, when she was thirteen, rather than in 2003, when she was not yet thirteen. He asserts the trial judge should just have granted the motion for judgment of acquittal "if the evidence was insufficient to support a conviction. . . ." (Petition, Doc. No. 1, PageID 66.) This claim is procedurally defaulted because it could have been but was not raised on direct appeal. Moreover, it is without merit. Kaeding's whole defense was (and still is from his filings) that the sex didn't happen at all, but if it did happen, it was in 2004. As outlined above, the evidence was sufficient for conviction, but if the jury

41

believed that the sex happened but not until 2004, that would have been sufficient to convict on the lesser included offenses.

Kaeding's next sub-claim is that the trial court erred in not sustaining objections made during closing argument.   For reasons given above regarding the prosecutorial misconduct claims, this sub-claim is without merit.

The last sub-claim is not about an evidentiary ruling at trial, but rather about the finding on Kaeding's first petition for post-conviction relief that Lucille Moore's affidavit about the victim's post-trial recantation was not credible. Kaeding asserts this somehow violated his rights because

> [T]he issue of the affiant's credibility had been previously determined by the same Court on 5-02-2006 in response to the State's motion for the testimony of the affiant for their purposes. The Court determined that the affiant's testimony was credible and relevant at that time When requested by the prosecution and when it was requested by the defense the Court rules it is not relevant which is contrary to it's previous ruling that it was relevant this violates the doctrine of collateral estoppel and the Court's ruling violates the petitioner's right's [sic] to due process and a fair trial guartanteed [sic] to the petitioner by the 5th and 14th amendment of the constitution and this violation rises to the level required for habeas relief for an improper evidentiary ruling. If the affiant's testimony was credible when requested by the State, it should have been credible when requested by the the [sic] defense.

(Petition, Doc. No. 1, PageID 67-68.)   Kaeding gives absolutely no record reference to where any prior ruling on Ms. Moore's possible testimony is given and the Court has been unable to locate it. However, a ruling that a witness had potentially credible testimony to give on one topic would not be binding when the court was called upon to rule on the credibility of that witness on another topic.   For example, I might be found to be a credible witness on the question of whether there is an American flag now flying in front of the federal courthouse in Dayton because I can look out the window of my office and see it (it is light outside, I have my glasses on, the blinds in my office are

42

not drawn, etc.)   On the other hand, I am not a credible witness on whether the flag is flying in front of the bankruptcy court because it is not presently in my line of sight.   There is no such thing as collateral estoppel between two findings on witness credibility unless those findings fit the criteria for collateral estoppel set forth above.   This last sub-claim is without merit.

Accordingly, Kaeding's Ninth Ground for Relief should be dismissed with prejudice.


**Ground Ten:   Cumulative Error**


In his Tenth Ground for Relief, Kaeding asserts that, even if the individual errors, he has pointed out do not warrant habeas relief, taken together they violated his right to a fair trial. However, cumulative error is not a cognizable constitutional claim post AEDPA. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir.), *cert. denied*, ___ U.S. ___, 132 S. Ct. 2751 (2011), *citing Moore v. Parker,* 425 F.3d 250, 256 (6th Cir. 2005), *cert. denied,* 549 U.S. 1027 (2006); *Lorraine v. Coyle*, 291 F.3d 416, (6th Cir. 2002).   Kaeding's Tenth Ground for Relief should be dismissed with prejudice for failure to state a claim upon which habeas corpus relief can be granted.


**Actual Innocence**


Kaeding claims that all of his procedural defaults should be excused because he is actually innocent.

In *Murray v. Carrier,* 477 U.S. 478 (1986), the Supreme Court recognized an exception to the cause and prejudice requirement for a petitioner who could demonstrate actual innocence. However, actual innocence means factual innocence as compared with legal innocence.

43

*Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986).   "A prototypical example of actual innocence in a colloquial sense is the case where the State has convicted the wrong person of the crime."  *Sawyer v. Whitley,* 505 U.S. 333 (1992). To come within the actual innocence exception to the required showing of cause and prejudice with respect to an abuse of the writ, a habeas petitioner or §2255 movant must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent.   That is, the petitioner must show that it is more likely than not that no reasonable juror would have found   him guilty beyond a reasonable doubt' in the light of the new evidence he or she is tendering.   In reaching this conclusion, the habeas court may need to make credibility determinations.   *Schlup v. Delo*, 513 U.S. 298 (1995), adopting standard from *Murray v. Carrier*, 477 U.S. 478 (1986).   The question is whether the petitioner presents evidence of innocence "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."   The trial courts will be able to resolve the great majority of actual innocence claims routinely without any evidentiary hearing.   *Schlup, supra*.

As the Warden points out, Kaeding has presented no new evidence of actual innocence. Every piece of evidence to which he points was available at the time of trial and either known to him or readily discoverable by him (i.e., the Konicki affidavits filed in this case in the Hamilton County Municipal Court).   Kaeding does not meet the Supreme Court's actual innocence standard.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice.   Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would not be taken in objective good faith.

September 11, 2012.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.   Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.   **Objections must be supported by record references.   A court considering objections is not required to search the record to find whether there is support for the objection.**   A party may respond to another party's objections within fourteen days after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).